JOHN DUNNE, ROBERT BICKLEY AND FRANK SPANN, PLAINTIFFS-RESPONDENTS, v. FIREMAN'S FUND AMERICAN INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND THE COUNTY OF MORRIS, DEFENDANT-THIRD PARTY PLAINTIFF-APPELLANT, v. THE STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT-RESPONDENT.

Argued October 20, 1975—Decided February 24, 1976.

*Mr. John H. Dorsey* argued the cause for appellant.

*Mr. Richard W. Berg,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Berg* and *Mr. Steven Leonard Strelitz,* Deputy Attorneys General, on the briefs and of counsel).

*Mr. Herbert M. Korn* argued the cause for respondents Dunne, Bickley and Spann (*Mr. Stephen S. Weinstein,* attorney).

*Mr. Clifford W. Starrett* argued the cause for respondent Fireman's Fund American Insurance Company (*Messrs. Schenck, Price, Smith & King,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.  This is another round in the litigation of Paul and Irene Cashen against three Morris County detectives, John Dunne, Robert Bickley and Frank Spann, for monetary redress because of an illegal search of the Cashen home in June 1970. Illegality resulted from the allegedly erroneous affidavit upon which the search warrant issued. We are now called upon to decide whether the County of Morris, or its liability insurance carrier, Fireman's Fund American Insurance Company (Fireman's Fund), or neither is obligated to furnish a defense for the detectives in the Cashen suit.

Initially the County of Morris was joined as a defendant in the Cashen suit because of its asserted vicarious responsi-

bility for acts of the three detectives. The trial court had granted motions for summary judgment in favor of all defendants. On appeal the Appellate Division reversed as to the three detectives, but affirmed the dismissal as to the County of Morris. *Cashen v. Spann,* 125 *N. J. Super.* 386 (App. Div. 1973). The Appellate Division reasoned that the detectives, in preparing the affidavit upon which the search warrant was predicated (Bickley executed the affidavit, Spann submitted information contained therein, and Dunne participated in drafting it), were agents of the State and not of the County. Accordingly, the judgment of dismissal in favor of Morris County was upheld.

We affirmed. 66 *N. J.* 541 (1975), *cert.* den. 423 *U. S.* 829, 96 *S. Ct.* 48, 46 *L. Ed.* 2d 46 (1975). Justice Pashman, writing for a unanimous court, carefully noted that

> * * * in the context of this case, * * * the detectives are to be considered as agents of the State and not the county. * * * We wish to make it clear, however, that our resolution of this issue is limited to the factual circumstances here presented. We find it appropriate to regard the defendant officials as State agents where the alleged tortious conduct arose out of the investigation of criminal activity, but we express no opinion on the question of whether * * * detectives can be considered State or county employees for other purposes. [*Id.* at 552].

Fireman's Fund had issued to Morris County a comprehensive general liability insurance policy for the calendar year 1970. Thus the incident in question occurred within the policy's time coverage. The Cashen complaint charged Dunne, Spann and Bickley with false arrest and imprisonment, libel, slander, invasion of privacy, assault and battery, and negligence. The policy expressly excluded coverage of liability for libel, slander, or violation of right of privacy, but provided subject matter coverage for other torts such as negligence. Because of this situation Fireman's Fund entered into a reservation of rights agreement with the County under which it agreed to furnish a defense for the County and the detectives. The agreement also provided that the County and Fireman's Fund would share the defense costs.

The parties reserved their rights to assert their respective positions as to coverage. Thereupon Fireman's Fund undertook defense of the action on behalf of the detectives and the County. The carrier engaged in pretrial discovery, successfully moved for summary judgment, and defended the favorable trial court determinations before the Appellate Division. After receipt of the Appellate Division's decision, the company refused to continue to defend the detectives.

Dunne, Bickley and Spann then instituted this action by complaint and order to show cause in the Superior Court, Chancery Division, against Fireman's Fund and the County of Morris for an order directing them to defend and pay any lawful settlement or judgment in the Cashen suit. The County filed a crossclaim against Fireman's Fund in which it sought an order directing the carrier to assume responsibility for any relief to which the plaintiffs might be entitled. The County also filed a third party complaint against the State in which it asserted that the State was obligated to defend the detectives and pay any judgment rendered against them.

On the return day of the order to show cause the trial court found that the County of Morris should indemnify the plaintiffs if they were found to be liable "for something they ought not to pay for where in good faith they did what they were told to do because they didn't have a lawyer." The Court entered an order that the "County of Morris shall continue to appear and represent" Dunne, Bickley and Spann. The trial court refused to dismiss the third party complaint against the State and entered no order with respect to that complaint.

The County of Morris appealed to the Appellate Division from that part of the order directing the County to appear and represent the three detectives.[1] We granted the State's

---

[1]Although the order was not a final judgment and a motion for leave to appeal had not been filed, we have considered the matter as if a motion for leave to appeal had been made and granted.

motion for certification of the pending appeal. 68 *N. J.* 175 (1975).

The initial issue to which we address ourselves is whether the detectives in the County Prosecutor's office were "persons insured" under the comprehensive liability insurance policy issued by Fireman's Fund to the County of Morris.

The named insured in the policy is the County of Morris. The policy also included as persons insured "any executive officer, director or stockholder thereof while acting within the scope of his duties as such". In two separate endorsements for which an additional premium had been charged, the insurance company had amended the persons insured provision to include "any employee of the named insured while acting within the scope of his duties as such", and to redefine persons insured to include an employee of the County "while acting within the scope of his duties as such".

County prosecutors' detectives possess a hybrid status. The position has been created by the County Detectives and County Investigators Act, *N. J. S. A.* 2A:157–1 *et seq.* — the title, perhaps indicative of some legislative intent, reflects their identification with the county. The Act authorizes the prosecutor to appoint persons "to be known as county detectives, to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law." *N. J. S. A.* 2A:157–2. The prosecutor, a State officer, selects and supervises them. The financial burdens related to the position are imposed on the county. The salary is paid by the county. *N. J. S. A.* 2A:157–18. The prosecutor may, with the approval of the board of chosen freeholders, fix the salary in excess of the statutory minimum. *N. J. S. A.* 2A: 157–18. No county detectives may be appointed in counties where the number of detectives exceed the maxima fixed by statute (50 in the first class counties, *N. J. S. A.* 2A:157–3, 28 in certain second class counties, *N. J. S. A.* 2A:157–4, etc.), without the prior approval of the board of chosen freeholders, except in a county of the first class with a population under 800,000. *N. J. S. A.* 2A:157–22. Further, all

necessary expenses incurred by county detectives, such as costs of insurance, automobiles, and other necessities, must be paid by the county. *N. J. S. A.* 2A:157–19 and 2A:158–7. The amounts may not exceed those fixed by the freeholders unless specifically authorized by the Superior Court assignment judge for that county. *In re Application of Bigley*, 55 *N. J.* 53 (1969) ; *In re Application of Schragger*, 58 *N. J.* 274 (1971). In those cases we pointed out that even where the assignment judge determines the number of additional detectives to be hired at certain salaries it was appropriate for the prosecutor initially to present his needs to the freeholders before turning to the assignment judge for relief.

We have also indicated that the board of freeholders can establish a time off or money equivalent program for overtime for county detectives. *Aumaitre, et al. v. Bd. of Freeholders of Camden County*, 58 *N. J.* 449 (1971) *(semble)*. County detectives acquire Civil Service protection only if the county in which they are employed has adopted the Civil Service Act. *Cooper v. Imbriani*, 63 *N. J.* 535 (1973). The county's employee record data include county detectives. Records of social security taxes, federal withholding taxes, sick leave, vacation leave, pension and insurance are maintained by the county. The requisite filings for social security and income taxes and transmittal of funds are made by the county. From a record keeping standpoint, all the indicia of an employer-employee status exist.

Recognition of county control over county detectives and of existence of an employer-employee relationship is not novel. In *Cooper v. Imbriani, supra,* we expressly rejected the contention that they were not county employees, at least for the purpose of determining whether they were in the classified service. *Id.* at 537 n. 1.

It has been held that detectives who have formed or joined an employee organization may bargain about terms of employment with the county as their employer under the New Jersey Employer-Employee Relations Act, *N. J. S. A.*

34:13A–1 *et seq.* *Pros., Det., Essex Cty. v. Hudson Bd. Freeholders,* 130 *N. J. Super.* 30 (App. Div.), certif. den. 66 *N. J.* 330 (1974). In that case the court, in commenting on the objections of the Prosecutor's Detectives and Investigators Association of Essex County to the direction of the Essex County Prosecutor that the workday should commence at 8:30 A.M., pointed out:

> If the employees form an organization recognized under the act for the purpose of collectively negotiating these terms with the public employer, their remedy in a case such as this is *to negotiate the matter of payment for longer hours with the respective boards of freeholders.* In the event the latter fail to negotiate in good faith, the organization may seek the aid of the courts to require them to do so. If an impasse is reached, either party may seek the aid of the Public Employment Relations Commission to assist in effecting a voluntary resolution. This procedure would apply plainly to the Detectives and the Hudson Court Clerks, both of which were organized when the Commission exercised jurisdiction. [Id. at 45; emphasis added].

See also *Bergen County Board of Chosen Freeholders v. Bergen County Detectives and Investigators Assn.,* 140 *N. J. Super.* 353 (App. Div. 1972), certif. den. 62 *N. J.* 574 (1973), and *In re Application of Schragger, supra,* where the propriety of bargaining with the Board of Freeholders was recognized. To the same effect see Public Employment Relations Commission decision, *County of Atlantic and Atlantic County Detectives and Investigators Assn.,* P. E. R. C. No. 32 (1969).

■ From all the foregoing it may be seen that the county-county detective relationship is that of employer-employee for certain administrative and remunerative purposes. This finding is not inconsistent with our conclusion that in preparing and executing the affidavit upon which the search warrant was based and conducting the search, Dunne, Bickley and Spann were "agents of the State." At the same time they were also employees of and there existed an employer-employee

relationship with the 'County.[2] *Cf. In re John Brennan,* 126 *N. J. Super.* 368 (App. Div. 1974) where the clerk of the district court was held to be an employee of the county and the presiding judge of the district court; *Godfrey v. McGann,* 37 *N. J.* 28 (1962) where the county was held responsible for embezzlement of funds by the cashier of the probation department whose salary was paid by the county but who was appointed by the chief probation officer, who is deemed to be in the State service.

The Fireman's Fund policy affords coverage to a county employee "while acting within the scope of his duties as such". This limiting phrase generally includes an employee's activities when he is on duty for his employer. The duties ascribed to a county detective are "to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law." *N. J. S. A.* 2A:157-2. These are his only prescribed functions or duties. As a county employee his duties consist of performance of services exclusively for the prosecutor. A detective then is a county employee who carries out his functions as such for the prosecutor. The status of the plaintiffs literally satisfies the definition in the Fireman's Fund policy.[3] This result conforms with the legislative policy that the county bear all costs and expenses,

---

[2]Although the Attorney General has opined that county detectives are State employees, Atty. Gen. P.M. 1955, No. 27, he has also recognized that they are joint employees of the county and State. Informal Atty. Gen. Op. to P.E.R.C., April 4, 1972.

[3]An analogous situation is one where an employer lends an employee to a second employer. The general employer's liability and workmen's compensation policy which covered employees during "all [business] operations necessary, incident or appurtenant thereto" was held to include accidents which occurred while the employee was working for the second employer. *Hall v. Crystal Lake Ice Co.,* 109 *Vt.* 416, 199 *A.* 252 (1938). A policy which provided coverage for drivers "wherever engaged" was held to be effective when a truck driver was injured while working for a third party. *Grabenstatler v. Rock Asphalt & Const. Co.,* 215 *App. Div.* 257, 213 *N. Y. S.* 126 (App. Div. 1926). See 11 *Couch on Insurance* 2d § 44:94 at 586–587 (1963).

including liability insurance premiums, incident to employment of county detectives. *N. J. S. A.* 2A:158-7.

The conduct of the parties evinces their objective that coverage was intended. *Michaels v. Brookchester, Inc.*, 26 *N. J.* 379, 388 (1958); *Journeymen Barbers, etc., Local 687 v. Pollino*, 22 *N. J.* 389, 395 (1956). The County unhesitatingly turned the defense of the Cashen suit against the three detectives over to the carrier, which accepted the defense without objecting that they were not persons insured under the policy. Conspicuous by its absence was any statement in the reservation of rights agreement with respect to the status of the detectives. These reactions to the suit against the detectives demonstrate the understanding of Fireman's Fund and the County that the detectives were employees for the purpose of coverage under the policy.

Under the terms of the policy Fireman's Fund is under a duty to defend the suit against its insured since the allegations in the complaint include some subject matter, negligence, which clearly falls within the coverage. We envision possible conflicts in this defense because coverage may not exist if liability is fixed on some other predicate, such as violation of right of privacy. Therefore, in the first instance the insured should select their own counsel, subject to the carrier's approval. In the event such approval is not forthcoming the selection should be made by the assignment judge. Reasonable counsel fees and costs of defense are to be paid by Fireman's Fund. At the trial interrogatories should be submitted to the jury to ascertain the precise factual basis for any conclusion of liability so that the coverage issue may be resolved. If a jury trial is waived, then the trial court will make those findings. We are not passing upon what responsibility, if any, the State may have to bear the cost of the defense or satisfy any judgment that may be entered against the detectives. Neither the plaintiff detectives nor Fireman's Fund have sued the State, and no adjudication was made on the third party action of the County of Morris against the State.

The judgment is reversed as to the County of Morris. Judgment is to be entered against Fireman's Fund requiring it to defend the 'Cashen suit in accordance with this opinion, and the matter is remanded to the trial court for disposition upon conclusion of the suit of *Cashen v. Spann et al.*

*For reversal and remandment*—Justices MOUNTAIN, SULLIVAN, PASHMAN and SCHREIBER and Judge CONFORD—5.

*For affirmance*—None.