HARTFORD ACCIDENT & INDEMNITY COMPANY, PLAINTIFF-APPELLANT, v. AETNA LIFE & CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued September 24, 1984—Decided November 15, 1984.

20

*Clarkson S. Fisher, Jr.,* argued the cause for appellant (*Evans, Koelzer, Osborne & Kreitzman,* attorneys).

*Michael B. Oropollo* argued the cause for respondent (*Hoagland, Longo, Oropollo & Moran,* attorneys; *Jonathan Bubrow,* on the brief).

PER CURIAM.

The Appellate Division affirmed the judgment in favor of defendant, Aetna Life & Casualty Insurance Company, substantially for the reasons set forth in the comprehensive written opinion of Judge Skillman. We granted plaintiff's petition for certification and likewise affirm substantially for the reasons

expressed by Judge Skillman. His unpublished opinion reads in pertinent part as follows:

This case involves a claim on a liability policy of insurance issued to Tilden-Yates Laboratories, Inc. (Tilden-Yates) by defendant, Aetna Life & Casualty Insurance Company (Aetna), for the amount paid in satisfaction of the judgment in *Sherman v. Tilden-Yates Laboratories, Inc.*, L–7774–74, as well as the costs of defending that suit. The plaintiff is Hartford Accident & Indemnity Company (Hartford), which defended and paid the judgment entered against Tilden-Yates and thereby became subrogated on Tilden-Yates' claim against Aetna. The total amount of the claim is $282,025.24, consisting of $198,262.17 paid in satisfaction of the judgment, counsel fees of $64,623.07 and other litigation costs of $19,140.

The theory of liability in the *Sherman* action, which must be accepted in the present case as having been established (See *N.J. Evid. R.* 63(21)), was that Tilden-Yates failed to adequately warn Dr. Donelson R. Manley of the dangers of using Atropisol, a product manufactured by Tilden-Yates, that that failure was a substantial factor influencing Dr. Manley's decision to dispense the drug to two-and-a-half year old Ann Marie Sherman and that her ingestion of the drug was a proximate cause of her consequent physical injuries.

The present lawsuit had its genesis in the fact that Aetna provided liability coverage to Tilden-Yates during part of the time period relevant to the Sherman claim while plaintiff Hartford provided coverage during another part of that time period. Aetna provided coverage as of February 4, 1971, which is the date on which Atropisol was dispensed to the parents of Ann Marie Sherman, and that coverage remained in effect through February 10, 1971. Hartford assumed coverage of Tilden-Yates on February 11, 1971 and that coverage remained in effect through February 21, 1971, which was the date on which the personal injuries to Ann Marie Sherman first manifested themselves. There is a substantial question whether Atropisol was actually administered to Ann Marie Sherman on or before February 10, 1971, that is, within the coverage period of the Aetna policy, and if so, whether the administration of the drug had any immediate effect upon her.

One theory advanced by Hartford is that, regardless of when the drug was actually administered or caused bodily injury to Ann Marie, Aetna should be held liable for 50% of the amount of the judgment and defense costs because it breached its duty to defend Tilden-Yates and such a breach imposes liability upon Aetna as a matter of law. The factual basis for this theory is that the complaint in the *Sherman* action alleged that the events establishing the liability of Tilden-Yates occurred "in and about the month of February 1971." The legal foundation for Hartford's theory is the line of cases which say that the existence of a duty to defend is determined by whether the allegations of a complaint, upon its face, fall within the coverage provided by an insurance policy. *See, e.g., The Ohio Cas. Ins. Co. v. Flanagin,* 44 *N.J.* 504 (1965).

\*      \*      \*      \*      \*      \*      \*      \*

The trial began on August 30, 1982 and was continued on September 1, 1982. * * * At the close of Hartford's case Aetna moved to dismiss. * * * The court at that time indicated that it would file a written opinion detailing its reasons * * * for dismissing at the close of plaintiff's case.

\* \* \* \* \* \* \* \*

■ The starting point in evaluating any claim that an insurer has breached a duty to defend its insured in litigation must be the policy of insurance. The duty to defend is not a product of statute or of common law. It is solely a contractual undertaking of the insurer and it can be as limited or as broad as the insurer sees fit to provide through its policy. Indeed, an insurance policy may provide indemnification for loss without any duty to defend litigation. Therefore, the source for any claim that Aetna breached its duty to defend must be those provisions of the policy of insurance issued to Tilden-Yates which delineate the scope of that duty.

■ Although the source of any duty of Aetna to defend Tilden-Yates must be the policy of insurance issued Tilden-Yates, a copy of that policy could not be located by either Aetna or Tilden-Yates and hence was not offered in evidence at trial. However, the parties have submitted the case to the court on the basis of a stipulation that the policy issued Tilden-Yates included the standard "duty to defend" clause contained in Aetna's Comprehensive General Liability Insurance policies, copies of which have been submitted to the court. This clause is appended to the sentence describing the insurer's general duty to indemnify the insured and must be read in that context to be understood. The pertinent policy language reads as follows:

The company will pay on behalf of the Insured all sums which the insured shall become legally obliged to pay as damages because of ... bodily injury ... *to which this insurance applies, caused by an occurrence,* and *the company shall have the ... duty to defend any suit* against the insured *seeking damages on account of such bodily injury* ... even if any of the allegations of the suit are groundless, false or fraudulent ... [Emphasis added].

It is evident on the face of the "duty to defend" clause that the duties to indemnify and to defend are closely related and that neither duty exists except with respect to occurrences for which the policy provides coverage. It is irrelevant to the duty to defend whether the suit is well founded or groundless (*Danek v. Hommer,* 28 *N.J.Super.* 68 (App.Div.1953) aff'd o.b. 15 *N.J.* 573 (1974)), but the duty extends only to claims within the coverage of the policy. Stated another way, the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured.

The cases in this state dealing with "duty to defend" clauses in insurance policies provide firm support for this interpretation. The leading case is *Burd v. Sussex Mutual Ins. Co.,* [56 *N.J.* 383] *supra.* See also *Williams v. Bituminous Cas. Corp.,* 51 *N.J.* 146 (1969). The fact pattern in *Burd* was somewhat similar to the present case. The plaintiff was an insured who called upon his insurer to defend a claim, was refused and then had a verdict entered against him. The complaint which had been filed against the insured alleged both

negligence, which was within the coverage of the policy, and an intentional tort, for which there was no coverage. The insured's theory, which the trial court accepted, was that the insurer had a duty to defend the insured because one count of the complaint fell within the coverage of the policy and that after refusing to provide such defense, the insurer was foreclosed from contending that the judgment was predicated upon an intentional tort rather than negligence. In reversing a summary judgment entered on this theory, the court said:

> The insured says the carrier is obligated to defend an action whenever the complaint alleges a basis of liability within the covenant to pay. That is the general approach. *Ohio Casualty Ins. v. Flanagin*, 44 *N.J.* 504, 514 (1965); *Danek v. Hommer*, 28 *N.J.Super.* 68, 77 (App.Div.1953), aff'd o.b. 15 *N.J.* 573 (1954). But when coverage, i.e., the duty to pay, depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint. So, for example, if a policy covered a Ford but not a Chevrolet also owned by the insured, the carrier would not be obligated to defend a third party's complaint against the insured which alleged the automobile involved was the Ford when in fact the car involved was the Chevrolet. The identity of the car, upon which coverage depends, would be irrelevant to the trial of the negligence action.

> The sense of the covenant is to defend suits involving claims which the carrier would have to pay if the claimant prevailed in the action. The covenant to defend is thus identified with the covenant to pay. That is the basis of the rule that ordinarily a carrier who defends unsuccessfully may not later deny coverage, absent an express agreement with the insured reserving a right to deny coverage. *Merchants Indemnity Corp. v. Eggleston*, 37 *N.J.* 114, 127 (1962). The obligation to defend "groundless, false or fraudulent" claims does not mean that the carrier will defend claims which would be beyond the covenant to pay if the claimant prevailed. It means only that a carrier may not refuse to defend a suit on the ground that the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.

>     *      *      *      *      *      *      *      *

> [I]f the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, ... the carrier should not be permitted to control the defense.

>     *      *      *      *      *      *      *      *

> In such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. On the contrary, the carrier should not be permitted to assume the defense if it intends to dispute its obligation to pay a plaintiff's judgment, unless of course the insured expressly agrees to that reservation. This is not to free the carrier from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is

later adjudged that the claim was one within the policy covenant to pay. [56 *N.J.* at 388–390].

This present case is clearly one in which the insurer had a factual basis for disputing coverage and in which resolution of that dispute depended on facts which would not be decided by the trial of the Shermans' claim against Tilden-Yates. The Shermans' claim was based on allegations that Tilden-Yates had failed to adequately warn Dr. Manley of the dangers of Atropisol, that that failure influenced Dr. Manley's judgment in dispensing the drug for Ann Marie and that the administration of the drug was a proximate cause of her injuries. The success of the Shermans' claim against Tilden-Yates did not turn on when the drug had been administered to Ann Marie, when she suffered injury or when the existence of the injuries became manifest. On the other hand, the precise chronology of events was critical in determining whether Tilden-Yates had coverage for the claim from Aetna. Tilden-Yates' policy with Aetna had expired on February 10, 1971, and Aetna had taken the position from the outset that the "bodily injury" to Ann Marie "occurred" after that date. If that turned out to be the fact, Aetna would have no duty under the plain terms of its policy either to indemnify or to defend because Ann Marie's injuries would not be a "bodily injury to which this insurance applies." The facts required to resolve this coverage question—when Atropisol was administered to Ann Marie, when she suffered injury and when that injury manifested itself—were extraneous to the trial of Ann Marie's claim against Tilden-Yates. *Cf. Williams v. Bituminous Casualty Corp. supra.*

Furthermore, any counsel retained by Aetna to defend Tilden-Yates against the Shermans' claim and at the same time to defend Aetna against the coverage claim of Tilden-Yates would have been placed in the position of conflict which the court in *Burd v. Sussex Mutual Ins. Co.* said must be avoided. See also *Title Ins. Co. of Pa. v. Wagner,* 179 *N.J.Super.* 234 (Ch.Div.1981). Total fidelity to the interests of Tilden-Yates in defending against the *Sherman* claim dictated that counsel focus solely upon rebutting evidence that the warnings with respect to the use of Atropisol were inadequate and that the administration of that medication had been a proximate cause of Ann Marie's injuries. However, the defense of Tilden-Yates' coverage claim on behalf of Aetna would have required counsel to seek simultaneously to show that the relevant events on which the Sherman claim was based had occurred after February 10, 1971. The discharge of this obligation to Aetna very well may have required presenting evidence which would be incompatible with the effective defense of the *Sherman* claim or at least dilute its force with the jury. Therefore, this case like *Burd* was one in which the insurer not only was within its rights in refusing to take over the defense on behalf of its insured but [was] in fact obligated to follow that course once it denied coverage. *Cf. Williams v. Bituminous Casualty Corp., supra.*[3]

---

[3] The practical effect of *Burd* is that an insured must initially assume the costs of defense itself, subject to reimbursement by the insurer if it prevails on the coverage question. It could be argued that in a case such as this, where the trial of the coverage question will simply determine which of two or more insurers must pay rather than possibly result in a finding of no

coverage at all, the initial costs of defense should be borne not by the insured, as in *Burd,* but by the insurers, subject to a final allocation of that cost after trial of the coverage question. However, the defense of the *Sherman* action was in fact assumed by one of the two insurers, plaintiff Hartford, and that proceeding has now been concluded. Therefore, no question of the duty to provide interim financing of defense costs is posed in the current procedural posture of this case.

Hartford's argument that the coverage issue could have been resolved in the *Sherman* trial is irreconcilable with the decision in *Burd.* Indeed, it is even clearer here than in *Burd* that the coverage question could not properly be resolved by the trial of the underlying action. The existence of coverage in *Burd* turned on whether the insured's actions were intentional or negligent. Although the jury in fact returned a general verdict against the insured after the insurer disclaimed coverage, it certainly would have been feasible to submit questions to the jury which would have elicited whether the verdict was based upon a finding of negligence or of intentional wrongdoing. *Cf. Dunne v. Fireman's Fund Am. Ins. Co.,* 69 *N.J.* 244 (1976). Nonetheless, the court concluded that such a finding by the jury would not be binding upon the insurer, because the potentiality for conflict dictates that "[the insurer] will not have been represented by counsel of his own choice upon that critical question." 56 *N.J.* at 394 . In a case such as the present one, where coverage turns on the date a plaintiff has suffered bodily injury, it is even clearer that the existence of coverage cannot be determined in the underlying action. There ordinarily would be no reason to present proofs in the underlying action which focused upon the date of the injury. *Cf. Williams v. Bituminous Casualty Corp., supra.* Therefore, any effort to decide the coverage question by directing relevant questions to the jury in the underlying action would carry a serious risk of complicating the trial, confusing the jury and perhaps prejudicing the rights of the parties. Therefore, it is clear that the coverage question could not appropriately have been decided within the confines of the *Sherman* trial.

Hartford relies upon *Dunne v. Fireman's Fund Am. Ins. Co., supra,* 69 *N.J.,* at 244, as supporting its argument that Aetna had a duty to defend Tilden-Yates even though it was contesting coverage for the *Sherman* claim. However, the policy involved in *Dunne* apparently imposed a duty upon the insurer to defend if any theory of liability would fall within the policy coverage, and the plaintiff in the underlying action alleged negligence, which came within the policy coverage. Furthermore, the insurer in *Dunne* had undertaken at the outset to defend the action pursuant to a reservation of rights agreement with its insured. *Id.* at 246. Therefore, the sole issue confronting the court was how to enforce the insurer's previously acknowledged duty to provide a defense for its insured, in view of the possible conflict raised by the circumstance that the insured would not enjoy coverage if liability were imposed on some basis other than negligence. To solve this problem, the court in *Dunne* set up a procedure for selection of new counsel by the insured, subject to approval of the insurer, and further provided that if that approval were not forthcoming, defense counsel would be selected by the assignment judge. The court further specified that at the trial, the case should be submitted to the jury with written

interrogatories, as would be the practice of most trial judges in any event, to determine the basis for any conclusion of liability rather than permitting the jury simply to return a general verdict. In short, *Dunne* was concerned with the mechanics of implementing a previously acknowledged duty of an insurer to provide a defense. It did not involve the interpretation of a "duty to defend" clause of a policy nor did it silently overrule the holdings of *Burd* concerning the duties of an insurer where the duty to defend turns on the existence of coverage and coverage is in dispute. *See Griggs v. Bertram*, 88 *N.J.* 347, 363 (1982).

Hartford also argues that Aetna should have sought a declaratory judgment in advance of the *Sherman* trial to establish its lack of coverage for that claim. However, the very same argument was explicitly rejected in *Burd*:

> In this connection the insured urges the carrier should be required to seek a declaration of its duty before the trial of the injured party's suit against the insured. But that proposition could lead to unnecessary litigation, for it would compel a lawsuit whenever coverage is denied even though the insured may silently agree with the carrier's position. We think the better course is to leave it to the contenders to decide for themselves if and when to sue. [56 *N.J.* at 391–392].

Aetna's refusal to defend Tilden-Yates in the *Sherman* action was fully justified by the existence of a substantial issue as to whether its policy provided coverage for that claim. Therefore, the order granting partial summary judgment, which concludes that there was a breach by Aetna of the duty to defend and imposes 50% of the costs of defense of the *Sherman* action based upon that breach, will be vacated. Aetna's obligation to pay either the judgment or defense costs must be determined solely by whether its policy provided coverage for the Sherman claim.

*　　*　　*　　*　　*　　*　　*　　*

Since Hartford is entitled to recovery only if the Aetna policy provides actual coverage for Tilden-Yates' liability for the *Sherman* judgment, it is necessary to examine the pertinent policy language. Before doing that, however, there are several preliminary points which should be noted.

First, it is Hartford, as the subrogee of Tilden-Yates, which has the burden of showing that coverage under the Aetna policy extends to the *Sherman* judgment. The issue here is not whether an incident falls within an exclusionary provision of a policy, on which the insurer would have the burden of proof. *Burd v. Sussex Mutual Ins. Co., supra,* 56 *N.J.* at 399. Rather, it is whether there was a contract of insurance in effect when an incident occurred, on which the party claiming coverage has the burden of proof. *See Williams v. Bituminous Casualty Corp., supra,* 51 *N.J.* at 151.

Second, since the case was dismissed at the close of plaintiff's case, the governing standard is whether, accepting as true all evidence supporting Hartford's position as well as all legitimate inferences which can be deduced therefrom, a reasonable mind could find that Ann Marie Sherman suffered injury on or before February 10, 1971. *Dolson v. Anastasia,* 55 *N.J.* 2, 5 (1969).

The source of any duty on the part of Aetna either to defend the *Sherman* action or to indemnify all or part of the judgment must be the contract of insurance between Tilden-Yates and Aetna. As noted previously, the basic coverage section of the policy states as follows:

[t]he company will pay on behalf of the insured all sums which the insured shall become legally obliged to pay as damages because of bodily injury ... to which this insurance applies, caused by an occurrence, and the company shall have the ... duty to defend any suit against the insured seeking damages on account of such bodily injury ...

In addition, the policy defines the terms "occurrence" and "bodily injury" as follows:

"bodily injury" means bodily injury, sickness or disease sustained by any person;

"occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

Aetna's position is that Ann Marie Sherman suffered no "bodily injury" on or before February 10, 1971, which was the date of expiration of the Aetna policy issued to Tilden-Yates. Consequently, Aetna argues that the injuries suffered by Ann Marie were not a "bodily injury ... to which this insurance applies, caused by an occurrence." On the other hand, Hartford relies upon evidence that Ann Marie was exposed to Atropisol prior to February 10, 1971 and argues that the triggering event for coverage under the Aetna policy is the date on which she was exposed to the drug rather than when her injuries manifested themselves.

■ There is a solid line of case authority in this jurisdiction supporting Aetna's interpretation of the pertinent coverage language. *See e.g., Deodato v. Hartford Ins. Co.*, 143 *N.J.Super.* 396 (Law Div.1976) aff'd o.b. 154 *N.J.Super.* 263 (App.Div.1977); *Yarrington v. Camarota*, 138 *N.J.Super.* 398 (App.Div. 1971); *Miller Fuel Oil Co. v. Ins. Co. of North America*, 95 *N.J.Super.* 564 (App.Div.1967). In the *Miller Fuel Oil* case the court stated:

As a general rule the time of the "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. "The time of the accrual of the insured's liability is the determining factor, not the time of an event which ultimately results in liability." [Citations omitted] [*Id.* at 578].

Later in the opinion the court said:

The tort of negligence is not committed unless and until some damage is done. Therefore, the important time factor, in determining insurance coverage where the basis of the claim is *negligence*, is the time when the damage has been suffered. [*Id.* at 579].

■ The specific language contained in the Aetna policy emphasizes that actual bodily injury must occur during the policy period in order for coverage to exist. The duties to defend or to indemnify extend only to "bodily injury ... to which this insurance applies, caused by an occurrence" and "occurrence" is

defined as "an accident, including injurious exposure to conditions, *which results, during the policy period, in bodily injury ...*" [Emphasis added].

Therefore, neither the dispensing of Atropisol by Dr. Manley nor its administration to Ann Marie Sherman on or before February 10, 1971 would be sufficient to afford coverage to Tilden-Yates under the Aetna policy. Rather, the existence of coverage would require a showing that Ann Marie Sherman actually suffered bodily injury on or before that date. However, the only evidence presented by Hartford on this issue—the testimony of Ann Marie's parents—was that the first time there was any sign of bodily injury was February 21, 1971, which was eleven days after Tilden-Yates' policy with Aetna had expired. This necessarily leads to the conclusion that the Aetna policy provided no coverage to Tilden-Yates for the injuries suffered by Ann Marie.

In arguing that the relevant date for the purpose of determining coverage under the Aetna policy is not when Ann Marie's injuries first manifested themselves but rather when she was exposed to the Atropisol, Hartford relies upon several cases which have held that insurance coverage for asbestosis claims turns on the date of "exposure" to asbestos rather than when the disease "manifests" itself. *See e.g., Porter v. American Optical Corp.,* 641 F. 2d 1128 (5th Cir.1981); *Ins. Co. of North America v. Forty-Eight Insulations,* 633 F.2d 1212 (6th Cir.1980). However, there was expert proof presented in these cases that each inhalation of asbestos into the lungs causes "bodily injury" which is immediately and progressively more harmful to the victim. *Porter v. American Optical Corp., supra,* 641 F.2d at 1144; *Ins. Co. of North America v. Forty-Eight Insulations, supra,* 633 F.2d at 1222–1223. The significance of such medical testimony to adoption of an "exposure" approach to resolution of insurance coverage questions in asbestosis cases was concisely stated in the *Forty-Eight Insulations* case:

> We think that a better view is that the contractual terms in issue here, "bodily injury" and "occurrence" are inherently ambiguous as applied to the progressive disease context before us.

> \* \* \* \* \* \* \* \*

> The medical evidence is uncontroverted that "bodily injury" in the form of tissue damage takes place at or shortly after the initial inhalation of asbestos fibers. Thus, it requires only a straightforward interpretation of the policy language for us to adopt the exposure theory. Indeed, for insurance purposes, courts have long defined the term "bodily injury" to mean "any localized abnormal condition of the living body." [*Id.* at 1222].

In other words, the courts which have endorsed the "exposure" theory in the asbestosis cases have not said that mere exposure to a substance is a "bodily injury." That would be an untenable distortion of the policy language. Rather, those courts have concluded from medical testimony that the inhalation of asbestos causes immediate tissue damage, although the effects of that damage do not immediately manifest themselves, and that such tissue damage is a "bodily injury."

■ Hartford failed to establish any factual foundation for an "exposure" approach to Aetna's liability on the Sherman claim. It did not present any

evidence that whatever Atropisol was administered to Ann Marie on or before February 10, 1971 caused any damage. No medical testimony was presented by Hartford. The only witnesses called were Ann Marie's parents and they both testified that she showed no sign of any bodily injury until February 21, 1971. To conclude from this testimony that Ann Marie suffered some unmanifested damage to her body on or before February 10, 1971 would be sheer speculation. Some diseases, such as asbestosis, are cumulative and progressive, but others are not, and Hartford presented no evidence to show that the harm to Ann Marie from the administration of Atropisol was cumulative and progressive. Rather, her bodily injury could have been caused solely by an overdose or idiosyncratic reaction to Atropisol on February 21, 1971. Alternatively, the Atropisol· may have had a beneficial effect upon her through February 10, 1971 but then began to cause damage to her subsequent to that date after a threshold amount of the drug had been administered. However, the evidence presented by Hartford was silent on this issue, and therefore there was no evidence presented to the court from which it could conclude that Ann Marie had suffered "bodily injury" during the term of the Aetna policy.

      *        *        *        *        *        *        *        *

In sum, there was no evidence presented by Hartford from which the court could find that Ann Marie Sherman suffered any "bodily injury" on or before February 10, 1971. Therefore, the court concludes that the Aetna policy did not provide coverage for the Shermans' claim against Tilden-Yates. Judgment will be entered in favor of defendant, Aetna, dismissing the complaint.

As noted above, the judgment of the Appellate Division is affirmed, substantially for the foregoing reasons contained in the opinion of Judge Skillman.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.