793 A.2d 824 (2002)
349 N.J. Super. 402
Michael AQUINO, Plaintiff-Respondent,
v.
STATE FARM INSURANCE COMPANIES, Defendant,
Travelers Group, Defendant-Appellant.
Anthony Faison, Plaintiff,
v.
Michael Aquino, Robert Magliancano and C & J Towing Company, Defendants.
Michael Aquino, Plaintiff-Respondent,
v.
State Farm Insurance Companies, Defendant-Appellant,
Travelers Group, Defendant.
Anthony Faison, Plaintiff,
v.
Michael Aquino, Robert Magliancano and C & J Towing Company, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 2002.
Decided March 27, 2002.
*825 Joel N. Werbel, Edison, argued the cause for appellant Travelers Group in A-6750-99T3 (Methfessel & Werbel, attorneys; Jared E. Stolz, on the brief).
Kenneth Zaremba, Livingston, argued the cause for appellant State Farm Insurance Companies in A-6961-99T1 (Ronca, McDonald & Hanley, attorneys; Mr. Zaremba, on the brief).
Richard M. Chisholm argued the cause for respondent.
Before Judges WEFING, CIANCIA and LESEMANN.
The opinion of the court was delivered by WEFING, J.A.D.
These two appeals were argued together before us; they arise out of the same factual complex and present related issues. We therefore consolidate them for purposes of this opinion. In A-6750-99, Travelers Group (Travelers) appeals from an order holding it responsible for certain counsel fees incurred by its insured, Michael Aquino. In A-6961-99, State Farm Insurance Companies (State Farm) appeals from a similar order. After carefully reviewing the record before us in light of the contentions advanced on appeal, we *826 affirm in part, reverse in part, and remand for further proceedings.

I
On March 7, 1995, Michael Aquino was on the premises of C & J Towing Company (C & J) in Newark, apparently in connection with a business he operates known as Aquino Auto Sales. C & J is owned by defendant Robert Magliancano, who employed Anthony Faison as a security guard for C & J. Magliancano kept several guns on the premises. His purpose in doing so is not entirely clear from the record before us. There is some evidence in the record he kept a gun on the premises to deal with stray dogs. Other portions of the record refer to frequent displays of weapons in an apparently boastful manner. On the day in question, Magliancano, Aquino and Faison were talking together and Magliancano had a handgun, loaded with blanks, openly displayed. Somehow, that gun came into Aquino's possession and, under circumstances that are not entirely clear, the gun discharged, injuring Faison.
Aquino maintained that the gun discharged accidentally; he told the police who responded to the scene that he and Faison were "playing around" with the gun, and that the hands of both men had been on the gun when it discharged. In conjunction with this appeal, we have been supplied with a copy of an expert's report submitted on behalf of Faison which expressed the opinion that the shooting could not have occurred in the manner in which Aquino had told the police.
The record before us does not contain a direct statement by Faison of how the shooting occurred. We are relegated to a summary of his testimony before a judge of compensation at a hearing to determine whether his injuries were compensable.[1]
The opinion of the judge of compensation states in part:
[T]here were many occasions when guns were involved during the business days and weeks. Several acts were elicited in testimony whereby the petitioner had a gun pointed at him by Mangliancano or by co-employees.... Also, at other times, in incidents not involving petitioner, there were frequent firing of the guns by Mangliancano, Acquino [sic], co-employees or tow-truck drivers. The guns were owned by Mangliancano. On March 7, 1995, the day petitioner was injured, there were four gun incidents before the gun incident that injured petitioner....
Petitioner was talking to a co-employee, Edwin, in the respondent's yard. Acquino [sic] and Mangliancano approached him. Acquino [sic] held him by the right arm and placed a gun against his head. Petitioner told Acquino [sic], "Mike, I don't like you playing with guns." In attempting to free himself from Acquino's [sic] grasp, petitioner's right arm coat sleeve was torn off. Acquino [sic] and Mangliancano were laughing. Petitioner got mad. Petitioner then went to get a bat that was in his booth. He returned to the yard with the bat, but he claimed he did not go to any specific person. He testified he said, "somebody *827 is going to fix his jacket." He claimed he did not get near any of the three people, Acquino [sic], Mangliancano or Edwin. He got only about twenty feet away .... [when] he was notified there was a telephone call for him. He turned around and returned to the booth.... He was in the booth, speaking on the telephone when Mike Acquino [sic] appeared at a booth window and pushed a gun against his abdomen. He again said to Acquino [sic], "I don't like you playing with guns." The gun went off, striking him in the stomach and propelling him, with the telephone still in his hand, out the booth door onto his back on the ground, screaming in pain.
Although the gun was loaded with blanks rather than live ammunition, the force of the discharge severely injured Faison; among his injuries was a laceration of his liver. He was hospitalized for five days and required surgery.
As a result of the incident, Aquino was indicted for second-degree aggravated assault, N.J.S.A. 2C:12-1b(1), third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b, and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. He was later accepted into pre-trial intervention. After Aquino successfully completed that program, the indictment against him was dismissed in March 1997.
Also in March 1997, Faison commenced suit for his injuries, naming Aquino, C & J, and Magliancano as defendants. Within his twenty-count complaint, Faison named Aquino as a defendant only in the first four counts. The first three of these counts asserted intentional torts, the fourth negligence. The complaint sought punitive as well as compensatory damages.
Aquino had two policies of insurance under which he sought a defense and indemnification in connection with the Faison lawsuit: one issued by Travelers, the other by State Farm. The Travelers policy is a homeowners policy for Aquino's residence; it excludes coverage for bodily injury "which is expected or intended by the insured" or "arising out of business pursuits" of the insured. It had a coverage limit of $300,000.
The State Farm policy insured a three-family rental property Aquino jointly owned with three other individuals, and had a coverage limit of $2,000,000. None of the owners lived in the house; rather, they owned it as an income-producing property. While the State Farm policy provided coverage for "bodily injury ... caused by an occurrence which takes place in the coverage territory," it excluded coverage for bodily injury "expected or intended from the standpoint of the insured," or "to any person or property which is the result of willful and malicious acts of the insured." In addition, the State Farm policy defined an insured in terms of the conduct of the insured's business. Aquino said he understood the policy insured his business activities under Aquino Auto Sales, while State Farm asserted that the business which was insured under its policy was ownership of a rental property.
Citing the exclusions in its policy, Travelers notified Aquino in December 1997 that it would provide a defense to him in the Faison litigation, but under a reservation of rights. State Farm, on the other hand, took the position that its policy provided no coverage and disclaimed responsibility entirely.
Travelers thereafter assigned counsel to represent Aquino in the Faison matter, and assured Aquino that if he wished to retain counsel at his own expense, the firm Travelers had selected would cooperate fully with that attorney. Travelers repeated that assurance when it notified *828 Aquino that it had received a settlement demand from Faison that exceeded Aquino's policy limits. Aquino had, in fact, retained counsel to advise him how to best proceed in the circumstances in which he found himself. That attorney monitored the defense put forth on Aquino's behalf in the Faison litigation and became dissatisfied with it.
Aquino's personal attorney first requested the firm selected by Travelers to agree to withdraw and execute a substitution of counsel in his favor. When he received no response to that request, he filed a motion in January 1999 in which he sought an order compelling his substitution as Aquino's attorney.
In support of his motion seeking to be named as defense counsel in Faison v. Aquino, he cited language found at the conclusion of the opinion of the Supreme Court in Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. 244, 353 A.2d 508 (1976). That matter was a coverage dispute relating to a civil lawsuit filed against Morris County and three Morris County detectives for damages resulting from an illegal search conducted pursuant to a warrant obtained through the submission of an erroneous affidavit. Cashen v. Spann, 66 N.J. 541, 334 A.2d 8 (1975). Fireman's Fund was the general liability insurer for Morris County and eventually declined coverage for the detectives. Dunne, supra, 69 N.J. at 246-47, 353 A.2d 508. The primary issue before the Supreme Court was whether detectives employed as members of the Prosecutor's staff should be considered employees of the County for purposes of the Fireman's policy; the Court answered that question in the affirmative. At the conclusion of the opinion, Justice Schreiber, writing for the Court, said:
Under the terms of the policy Fireman's Fund is under a duty to defend the suit against its insured since the allegations in the complaint include some subject matter, negligence, which clearly falls within the coverage. We envision possible conflicts in this defense because coverage may not exist if liability is fixed on some other predicate, such as violation of right of privacy. Therefore, in the first instance the insured should select their own counsel, subject to the carrier's approval. In the event such approval is not forthcoming the selection should be made by the assignment judge. Reasonable counsel fees and costs of defense are to be paid by Fireman's Fund.

[Dunne, supra, 69 N.J. at 252, 353 A.2d 508.]
By the time Aquino's motion to compel a substitution of counsel was argued, Aquino's personal counsel had also filed a declaratory judgment action against both Travelers and State Farm, seeking judgment that Aquino was entitled to coverage under both policies in connection with the Faison matter. The judge who heard Aquino's motion recognized that the attorneys assigned by Travelers to represent Aquino did have a conflict of interest because of the intentional torts asserted in the first three counts of the Faison complaint. He therefore permitted Aquino's personal attorney to substitute as defense counsel for purposes of those first three counts, and directed that counsel assigned by Travelers remain attorneys of record for the balance of the complaint. Further, he consolidated the liability and declaratory judgment actions. The order granting this relief, which specifically cited to Dunne, supra, was executed in March 1999.
The coverage issues projected in Aquino v. State Farm were presented to the trial court on motions for summary judgment. During the course of the argument on *829 those motions, Faison's attorney stated, "So there is really no issue as to intentional or accidental. I think that everybody pretty much concedes that it is accidental or that the only issue that is outstanding is the negligence aspect of the case." Based on that colloquy, everyone concurred that Aquino was covered under his Travelers' policy. The trial court then took up the question of coverage under the State Farm policy. After hearing argument, the trial court ruled that the State Farm policy was ambiguous, that Aquino was entitled to the benefit of that ambiguity and, in consequence, entitled to coverage under that policy as well.
The trial court's determinations on coverage were memorialized in an order of July 28, 1999 which provided that Faison's attorney had stipulated that he would produce no proofs at trial "other than in support of the negligence cause of action," and also granted summary judgment to Aquino against Travelers and State Farm on the coverage issues. The order further directed that Travelers and State Farm were responsible for the counsel fees incurred by Aquino both in Faison v. Aquino and in Aquino v. State Farm. Travelers and State Farm later agreed between themselves how to allocate responsibility for those counsel fees and any jury verdict on a covered claim.
In October 1999, Aquino's personal counsel submitted an affidavit of services detailing the legal services he had performed in connection with both Faison v. Aquino and Aquino v. State Farm. Over the carriers' objections, the trial court awarded the full amount requested, $44,983.30 for work performed in Faison v. Aquino, and $58,595.30 for work performed in the declaratory judgment action.
The matter of Faison v. Aquino eventually proceeded to trial in July 2000. We have been supplied with a copy of an order entered July 6, 2000, dismissing with prejudice the first three counts of the Faison complaint. During the course of the trial in Faison v. Aquino, Aquino was represented by the firm selected by Travelers, rather than his individual attorney. We have not been supplied with any transcripts from that trial, but the record does contain a judgment entered July 10, 2000, following a jury verdict in favor of Faison and against Aquino, Mangliancano and C & J in the amount of $414,448. We have also been supplied with a warrant to satisfy judgment, indicating the judgment has been paid in full. A necessary corollary of the July 6 order dismissing the intentional torts contained in the first three counts of the complaint is a conclusion that the verdict against Aquino had to be premised on a finding of negligence, no other theory having been viable at trial. We infer from the date of that order that it was entered at or about the time the trial commenced.
Following that verdict, Aquino's attorney filed a supplemental request for counsel fees. After a hearing, the trial court granted the request, awarding an additional $19,853 for legal services rendered in Faison v. Aquino and $7,137 for additional legal services rendered in the declaratory judgment action.
Aquino's attorney was thus awarded in excess of $130,000 as counsel fees in both actions. Before us, neither Travelers nor State Farm contest the coverage determinations made during the course of this matter, but both dispute the entitlement and quantum of counsel fees.

II
We take up first the question of counsel fees in connection with the declaratory judgment action, Aquino v. State Farm. Travelers asserts that it should have no responsibility for counsel fees in *830 that matter because it never declined coverage to Aquino, but in fact retained counsel to defend him, albeit under a reservation of rights. It also disputes the amount of fees awarded, pointing out that the trial court never made a detailed review of the affidavits of services that were submitted, but rather simply awarded Aquino's attorney the full amount requested. State Farm, on the other hand, does not dispute the propriety of an award of counsel fees in the declaratory judgment action, Aquino having prevailed against it in his claim of coverage, but it does join in Travelers' complaint that the trial court failed to scrutinize the affidavits of services in any regard and simply awarded the full amount sought.
We reject Travelers' contention that it is not subject to an award of counsel fees in the context of the declaratory judgment action because it never denied coverage to its insured. While the argument may be facially correct, it overlooks the clear conflict of interest that infected the counsel selected by Travelers to defend Aquino on all four counts of the complaint in which he was named. Faced with conflicting assertions of intentional conduct, for which Travelers would afford no coverage, and negligent conduct, for which Travelers would afford coverage, that firm could not proceed with undivided loyalty to defend all four counts. We consider the declaratory judgment action an appropriate vehicle for presenting the question of the carrier's defense of its insured to the court for resolution. The same principles which underlie those cases awarding counsel fees to a successful claimant in a declaratory judgment action seeking to uphold an insured's right to coverage are equally applicable here. Sears Mtge. Corp. v. Rose 134 N.J. 326, 356, 634 A.2d 74 (1993); R. 4:42-9(a)(6).
We agree, however, with Travelers and State Farm that the quantum of the fees was never adequately addressed by the trial court. Within his several affidavits of services, Aquino's attorney asserted that he had spent approximately 260 hours handling the declaratory judgment action; he sought compensation at the rate of $250 per hour. Here, the trial court made no findings whether that represented a reasonable hourly rate, and made no findings whether the hours expended were reasonable. The insurers point out, for instance, that according to the affidavits, 113 hours were spent preparing two summary judgment motions and an opposition brief. We consider the present posture of the matter analogous to that which confronted us in S.N. Golden Estates, Inc. v. Continental Cas. Co., 293 N.J.Super. 395, 407-09, 680 A.2d 1114 (App.Div.1996) (Golden I), in which we reversed a counsel fee award because the trial court merely granted the request, over objection, without making any findings as to the reasonableness of the services provided or the rate requested. Similarly, in Yueh v. Yueh, 329 N.J.Super. 447, 748 A.2d 150 (App.Div.2000), we reversed and remanded a counsel fee award because the trial court had failed to make a sufficient examination of the request. We wrote:
The lack of critical analysis of counsel's fee request leads us to the conclusion that the judge's assessment of the reasonableness of the hours expended cannot be given weight and hence is not entitled to any deferential treatment.... Simply put, the motion judge failed to scrutinize the fee request in accordance with the spirit and intent of the Court Rules, the statute and the case law. Accordingly, we remand for a searching reconsideration of the fee award.

[Yueh, 329 N.J.Super. at 467-69, 748 A.2d 150.]

*831 III
We turn now to the approximately $63,000 awarded as counsel fees for services Aquino's attorney provided to him in Faison v. Aquino. Here, the insurers again complain that the trial court made no analysis of the fee request and we are again constrained to agree. They assert further, however, that neither carrier had any responsibility to reimburse Aquino for any fees he incurred when he retained personal counsel to defend him against Faison's complaint. They stress that to the extent Aquino's personal attorney defended him against claims of intentional conduct, they had no obligation to afford a defense to him and thus should not be compelled to reimburse him for the counsel fees he incurred.
Aquino relies upon Justice Schreiber's dicta in Dunne, supra, to which we referred earlier in our opinion. The carriers argue that whatever validity Dunne may have possessed has been weakened by the later opinion of the Court in SL Industries v. American Motorists Insurance Co., 128 N.J. 188, 215, 607 A.2d 1266 (1992), in which Justice Garibaldi wrote that an "insurer [is obligated] to pay only those defense costs reasonably associated with claims covered under the policy." Arguing from that principle, both Travelers and State Farm urge they have no obligation to contribute to defense costs incurred in connection with defending against alleged intentional torts.
In our judgment, a close reading of SL does not lead inexorably to the result the carriers desire. The Court in SL was called upon to consider, inter alia, whether the alleged emotional distress experienced by an executive who claimed to be the victim of age discrimination could constitute either "bodily injury" or "personal injury" for purposes of certain insurance policies held by the employer.
The Court was not confronted with the issue of conflict of interest between theories of negligence and intentional conduct which underlay the Dunne opinion. Thus the language of Justice Garibaldi's opinion must be viewed within the context in which it was written. We do not consider SL in any way to be a retreat from the position espoused by Justice Schreiber in Dunne.
We should not be understood as holding that in all circumstances a carrier has a duty to assume the cost of defending both covered and non-covered claims. We read Dunne to hold that special circumstances may exist in given matters under which a carrier may be responsible for such costs. In our judgment, such special circumstances exist here.
We note, for instance, the following circumstances which exist in this case: in Travelers' letter of December 17, 1997 to Aquino, it noted that the first three counts of Faison's complaint asserted intentional conduct and that the incident apparently occurred in connection with Aquino's business, and based on those factors, Travelers asserted that it was reserving its rights to disclaim coverage; within that same letter, Travelers also noted that Faison was seeking punitive damages, and informed Aquino that in no event would its policy cover such damages; Travelers also assured Aquino that during the period of the reservation, his "rights and interests [would be] protected," and that the law firm it had selected would defend his interests.
These assurances are in stark contrast to the statements that in no event would a verdict for punitive damages be covered and that Aquino might wish to retain separate counsel to represent his interests over and above the $300,000 policy limit.
Travelers thus undertook to provide a full defense for Aquino, with no indication *832 that any conflict of interest might exist in defending both the intentional and negligence counts. It was that very conflict that necessitated separate counsel's entry on Aquino's behalf. In such a context, it is, in our judgment, only reasonable to conclude that the carriers have some responsibility for Aquino's counsel fees. The two carriers having agreed between themselves to divide responsibility for any award of counsel fees, State Farm shares that responsibility.[2]
We are thus satisfied that Aquino's attorney is entitled to some counsel fees for the work that he performed in connection with the Faison matter. He was counsel of record for three of the counts and was required to participate as long as the question of liability premised solely on intentional conduct remained in the case. Dunne clearly states that in such a posture, the carrier has a responsibility for counsel fees.
It does not follow, however, that he is entitled to be compensated by the carriers for that defense work on the same basis that he is entitled to be compensated for work performed in connection with the declaratory judgment action. While Aquino may have been entitled to an attorney of his selection to handle the claim of intentional conduct, he does not have the right to dictate to the insurers the hourly rate they must pay. The trial court here should have determined a reasonable hourly rate for defense work of this nature and set a fee accordingly. Published material indicates, for example, that lawyers who perform insurance defense work may bill at a significantly lower hourly rate than do lawyers rendering other legal services. Altman Weil, Inc., "The 2001 Survey of Law Firm Economics Executive Summary, Financials," at http://www.altmanweil.com/products/surveys/slfe/financials.cfm (last visited Feb. 27, 2002); Haines, "Lawyers Lack Adequate Guidelines on the Dishonesty of Overbilling", New Jersey Law Journal, January 3, 2000; Couch, supra, § 202:22.
Nor does it follow that counsel is entitled to an award of fees for all the work he has performed. We have conducted our own cursory review of the affidavit of service in Faison v. Aquino. It commences with his initial meeting with Aquino in December 1997 and his background investigation. He did not formally enter the case until he was granted that limited relief in March 1999. Clearly, much of the *833 earlier work was entirely unrelated to the conflict of interest confronting Travelers and we are unable to perceive any basis why the carriers should be required to assume responsibility for those fees.
Moreover, it has not escaped our notice that Aquino's counsel was unhappy with the nature of the defense efforts put forth by the firm selected by Travelers, and spent at least a portion of his time monitoring that work. Again, we see no basis to charge such work to the carriers at all, at least to the extent it was not specifically designed to protect Aquino against the conflict of interest.
Because of the chowdered procedural background to these matters, we are not able to determine with reasonable confidence when the intentional torts pled within the first three counts of Faison v. Aquino were no longer substantially viable. The record before us, for instance, contains the following orders:
1) Order entered April 26, 1999 dismissing Faison's claim for punitive damages but providing "counsel for plaintiff may raise such an issue with the trial judge only if additional facts not before the Court on April 1, 1999 are presented";
2) Order entered July 28, 1999 which provided that "counsel for plaintiff, Anthony Faison, will introduce no proofs at the trial of Faison v. Aquino other than in support of the negligence cause of action....";
3) Order entered July 6, 2000 dismissing the three counts of the Faison complaint alleging intentional conduct by Aquino.
On remand, the trial court should determine if there was a point prior to trial when the firm assigned by Travelers was no longer confronted with a realistic conflict of interest. If such a point can be determined, the trial court should then consider whether there is any justification for a counsel fee award for services performed after that date.
We are satisfied that with the limitations we have set forth, the result which we have reached is fair and appropriate in the context of this case. Travelers, in essence, undertook, according to its letter of December 17, 1997, to defend Aquino against allegations of intentional conduct, as well as negligence, and assured him his "rights and interests [would be] protected." Having undertaken that responsibility, we cannot consider it unfair to charge it with the reasonable cost of defending against allegations of intentional conduct when the attorneys it selected had an inherent conflict of interest which precluded them from handling both aspects of the defense. It will, in substance and effect, be responsible for that which it originally agreed to provide, no more and no less.
We have, during the course of deciding this appeal, considered whether the trial court should additionally consider the question of Aquino's subjective intent at the time the gun fired. Such a question may often arise in the context of determining coverage. Harleysville Ins. Co. v. Garitta, supra. Here, State Farm and Travelers are not contesting the coverage determination, only the resultant counsel fee award. The two carriers, for instance, do not attempt to attribute any significance to the decision of the judge of compensation that Faison could seek remedies both at common law and in compensation. We have concluded that determination of Aquino's intent is no longer necessary in light of the July 6, 2000 dismissal of all the intentional counts in the complaint. As we noted earlier, it must follow from that dismissal that the jury rested its liability decision against Aquino solely on negligence.
Finally, the trial court should carefully review the affidavits of services to determine *834 whether the quantum of time asserted for the particular services is reasonable. It is not sufficient, as Aquino's attorney contends, that the number of hours over the length of years be reasonable; the time spent performing particular services must be reasonable as well.
For all the reasons we have set forth, we affirm in part and reverse in part and remand this matter to the trial court for further proceedings in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] Faison originally filed a claim for, and received, workers compensation benefits. In July 1999, the judge of compensation granted an unopposed motion to dismiss the petition, citing the statutory exclusion of horseplay. N.J.S.A. 34:15-7.1. Several months thereafter, the employer filed a motion to vacate that dismissal, which Faison opposed. The judge of compensation determined, nonetheless, to vacate the dismissal and take testimony. After conducting a hearing, the judge of compensation concluded Faison was entitled to sue both at common law and for workers' compensation benefits. So far as we can determine, that conclusion was never challenged.
[2] Courts which have been called upon to analyze the question of an insurer's duty to defend its insured in the face of claims which may not be covered under the policy in question have often been plunged into the thicket of determining an insured's subjective intent. Harleysville Ins. Co. v. Garitta, 170 N.J. 223, 785 A.2d 913 (2001) (son of insured homeowner not entitled to defense in a wrongful death action; stabbing the victim to death "particularly reprehensible" and thus intent to injure could be presumed); Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992) (plaintiff entitled to defense under a homeowner's policy covering bodily injury in a suit against the insured by a teacher who said she suffered emotional distress after the insured publicly questioned her competence); SL Industries, supra, (employer sued for emotional damages flowing from alleged age discrimination and fraud entitled to coverage and defense under two liability policies covering bodily injury and personal injury). Courts have also been asked to determine whether an insured's actions should be characterized as negligent or intentional. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970). It can be difficult to extract an analytically sound principle from the resultant decisions, some of which are collected at 14 Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 202:20 (3d ed.1999). Some jurisdictions, such as California, have dealt with the troublesome issue of a conflict of interest between the insured and the insurer, the situation presented here, by way of statute. Cal. Civ.Code § 2860 (2002). We commend the matter to the Legislature for its consideration.