886 A.2d 181 (2005)
381 N.J. Super. 344
In the Matter of Monica MALONE, Department of Human Services.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 2005.
Decided November 23, 2005.
*182 Steven Wallach, Princeton, argued the cause for appellant Monica Malone.
Betty M. Ng, Deputy Attorney General, argued the cause for respondent Department of Human Services (Peter C. Harvey, Attorney General, attorney; Michael Haas, Assistant Attorney General, of counsel; Ms. Ng, on the brief).
Before Judges WEFING, FUENTES and GRAVES.
The opinion of the court was delivered by
WEFING, P.J.A.D.
This matter commenced as a disciplinary proceeding when Woodbine Developmental Center sought to suspend Monica Malone and eight other individuals following the death on May 31, 1998, of sixty-one year old G.C., a developmentally disabled individual who resided at Woodbine. In addition to his profound developmental limitations (according to his records, G.C. had a mental age of approximately seven months), G.C. would compulsively ingest inedible objects or substances. In individuals who have a mental age of two years or more, this condition is referred to as Pica. Because of G.C.'s profound limitations, he did not fit within the diagnostic criteria of the Diagnostic and Statistical Manual IV (DSM IV) for Pica, and he was not listed on the Pica registry Woodbine maintained for its residents. There had been earlier incidents, however, of G.C. consuming items such as a rubber glove and hard plastic.
On the afternoon of May 31, 1998, G.C. was left alone for a brief period and was somehow able to get possession of several latex gloves. When an aide returned to the room, G.C. was found slumped in his wheelchair, having choked to death.
Following an investigation into this incident, Woodbine sought to suspend the following individuals: Tereatha Riley, the Habilitation Plan Coordinator who headed the interdisciplinary team responsible for developing a plan for G.C.'s care; Delores Basco-Berenfeld, the head nurse in G.C.'s cottage; Constance Weidner, a Supervisor of Professional and Residential Services, who supervised three cottages, including G.C.'s; Noel Turner and Lorena Shaffer, both Assistant Supervisors of Professional and Residential Services; Cornelia McNear, Head Cottage Training Supervisor, the senior manager in G.C.'s cottage; Betty Wills, Cottage Training Supervisor; Edneldor White-Fazenbaker, Behavioral Modification Program Technician; and Monica Malone, Staff Clinical Psychologist.
Ms. Malone has been employed at Woodbine since 1984. She was assigned responsibility for G.C.'s cottage in January 1998, five months prior to his death. She was charged with having failed to develop an intervention plan to address G.C.'s Pica behavior.
Ms. Malone challenged her threatened suspension, as did the other named individuals. She retained Steven Wallach, Esq. to represent her in conjunction *183 with the proceedings that followed in the wake of G.C.'s death and signed a retainer agreement under which she agreed to pay for Mr. Wallach's services at the rate of $250 per hour.
The charges against these nine individuals were heard together in the Office of Administrative Law, and the hearings took eleven days to conclude. During the course of those hearings, Ms. Malone testified that G.C. did not fit within diagnostic criteria for Pica. She noted that his mental age of seven months placed G.C. at the oral stage of development. She also testified that in view of his mental age, any behavior modification program would be inappropriate. There was no testimony presented that contradicted that of Ms. Malone.
Following the conclusion of these hearings, the administrative law judge issued a detailed written opinion in which he concluded, inter alia, that the charges against Monica Malone were not substantiated, and he directed they were to be "dismissed with restitution and attorneys fees in accordance with the regulations." The matter was then presented to the Merit System Board, which issued an order on January 29, 2003, in which it found that Ms. Malone's suspension had not been justified and directed that she be awarded back pay, benefits, seniority and counsel fees "pursuant to N.J.A.C. 4A:2-2.12."
Ms. Malone submitted an application to be reimbursed for her counsel fees, which had totaled $57,071.04 and which she had paid in full. Her attorney, Mr. Wallach, submitted a certification as to his services and noted in that certification his unique qualifications. Mr. Wallach has both a Masters degree and a Ph.D. degree in clinical psychology from Purdue University. He also has actual clinical experience, having completed an internship in clinical psychology at Vanderbilt Medical Center. After he obtained a J.D. from the University of Chicago Law School and passed the New Jersey bar exam, Mr. Wallach served for six years as a deputy attorney general representing the agency then known as the New Jersey Division of Mental Retardation. For the next several years, Mr. Wallach was Deputy Attorney General in Charge of Litigation. He later entered the private practice of law and in 1985 was certified by the New Jersey Supreme Court as a Civil Trial Attorney. In her application, Ms. Malone noted that she had been in the process of completing her doctoral degree when she was suspended and that she had retained Mr. Wallach because imposition of any discipline could have jeopardized her prospects of becoming licensed in New Jersey.
Woodbine Developmental Center objected to the fee request, asserting that Mr. Wallach's fees should be computed at the rate of $200 per hour under N.J.A.C. 4A:2-2.12(c)3. The Merit System Board concluded that Mr. Wallach had "provided insufficient information to justify awarding him counsel fees at the requested hourly rate of $250." It also noted that the matter had involved "several days of hearing[s] with several witnesses, none of whom were deemed expert witnesses." The Board awarded a reduced amount of $45,607.50.
Ms. Malone petitioned for reconsideration. In conjunction with the application for reconsideration, Mr. Wallach submitted information about the hourly rates charged by other practitioners having less experience than he; these hourly rates either equaled or exceeded his own. In addition, he took issue with the Board's view that the matter was not particularly complex. He noted that the hearings took eleven days to complete, that eighteen witnesses in all testified and ninety-six exhibits were received into evidence.
*184 The Board denied Ms. Malone's motion for reconsideration, and she has appealed. After reviewing the record in light of the contentions advanced on appeal, we reverse in part and affirm in part.
We note at the outset that we disagree with the position asserted by the Board, that the scope of our review of its decision in this matter is measured by that ordinarily governing appeals of administrative decisions. The Board contends that its decision in this matter should be accorded substantial deference and not reversed unless it is arbitrary, capricious, unreasonable, or unsupported by credible evidence in the record. Brady v. Bd. of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997). We, however, deem the issue of what constitutes an appropriate award of counsel fees to be a mixed question of law and fact for which our review is de novo.
Setting an award of counsel fees is, in our opinion, in the nature of a judicial function. Further, N.J.A.C. 4A:2-2.12(e) provides that a fee award may be adjusted in accordance with R.P.C. 1.5(a) of the Rules of Professional Conduct. Interpreting those guidelines involves legal analysis and judicial assessment. Our review of the Board's decision is not subject to the constricted scope of review it seeks.
N.J.A.C. 4A:2-2.12 governs awards of counsel fees by the Merit System Board. It provides in pertinent part:
* * *
(c) Subject to the provisions of (d) and (e) below, the following fee ranges shall apply in determining counsel fees:
1. Associate in a law firm: $100.00 to $150.00 per hour;
2. Partner or equivalent in a law firm with fewer than 15 years of experience in the practice of law: $150.00 to $175.00 per hour; or
3. Partner or equivalent in a law firm with 15 or more years of experience in the practice of law, or, notwithstanding the number of years of experience, with a practice concentrated in employment or labor law: $175.00 to $200.00 per hour.
(d) If an attorney has signed a specific fee agreement with the employee or employee's negotiations representative, the attorney shall disclose the agreement to the appointing authority. The fee ranges set forth in (c) above may be adjusted if the attorney has signed such an agreement, provided that the attorney shall not be entitled to a greater rate than that set forth in the agreement.
(e) A fee amount may also be determined or the fee ranges in (c) above adjusted based on the circumstances of a particular matter, in which case the following factors (see the Rules of Professional Conduct of the New Jersey Court rules, at RPC 1.5(a)) shall be considered:
1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
2. The fee customarily charged in the locality for similar legal services, applicable at the time the fee is calculated;
3. The nature and length of the professional relationship with the employee; and
4. The experience, reputation and ability of the attorney performing the services.
The Board relied upon paragraph 3 of subsection (c) in determining that Ms. Malone was entitled to be reimbursed for her counsel fees at an hourly rate of $200. Ms. Malone, on the other hand, points to subsections (d) and (e) to justify reim-bursement *185 at an hourly rate of $250. She contends that she is entitled to reimbursement at the higher hourly rate under both subsections; she stresses that she signed a retainer agreement under which she agreed to pay Mr. Wallach $250 per hour for his services on her behalf and contends that the difficulty of the matter, the skill needed and Mr. Wallach's experience, reputation and ability all combine to justify the higher hourly rate.
We are compelled to agree. We do not consider it sufficient, for example, for the Board to rely upon the fact that no expert witnesses testified at the hearings. Ms. Malone was subject to discipline for not developing an intervention plan to deal with G.C.'s behavioral disorder of eating inedible substances. Defending her against this charge involved knowledge of DSM classifications and their appropriate use. Mr. Wallach, as her attorney, was required to understand the significance of G.C.'s mental age of seven months and demonstrate that it was not appropriate to develop and implement a behavior modification plan for him.
Nor are we persuaded that the lower hourly rate is justified because not all of the testimony presented during the eleven days of hearings was specifically directed to Ms. Malone. As her attorney, Mr. Wallach had to be alert to the potential implications for his client of the testimony put forth by each of the various witnesses. The decision whether to challenge that testimony, whether through cross-examination or the presentation of additional witnesses and exhibits, required both knowledge of the subject matter and the requisite judgment. It may require more skill in a particular situation to recognize that cross-examination of a witness is not warranted than it would take to phrase a question properly.
In addition, Ms. Malone's entitlement to full reimbursement should not hinge on the decision to join her hearing with that of the remaining Woodbine employees. That decision was not hers to make and, by necessity, extended the length and potential complexity of the matter.
Further, we disagree with the Board's rejection of the additional information about billing rates that Mr. Wallach submitted to the Board at its request. The Board criticized Mr. Wallach's submission for not detailing fees awarded by the Board in prior matters. N.J.A.C. 4A:2-2.12(e), however, does not purport to measure an appropriate fee by the Board's own past practices; rather, it refers, as does R.P.C. 1.5(a), to fees "customarily charged in the locality for similar legal services." We do not think it could seriously be disputed that attorneys of Mr. Wallach's background and experience would customarily charge an equivalent or greater amount for their services in this matter. "Median Hourly 2005 Billing Rates," http://www.altmanwe il.com/products/surv eys/slfe/financials. cfm (last visited November 8, 2005).
We have noted in another context that a party "does not have the right to dictate" the hourly rate at which he is entitled to be reimbursed by another for counsel fees. Aquino v. State Farm Ins., 349 N.J.Super. 402, 415, 793 A.2d 824 (App.Div.2002). Ms. Malone is not entitled to be reimbursed at the $250 hourly rate merely because she signed a retainer agreement to that effect. Rather, we have concluded, after considering the guidelines contained in N.J.A.C. 4A:2-2.12(e) and R.P.C. 1.5(a) that the amount requested is reasonable in the context presented. Each counsel fee application is presented in a unique factual construct, and nothing within this opinion should be understood to indicate that a client of Mr. Wallach who *186 prevailed before the Board would routinely be entitled to be reimbursed for counsel fees at an amount greater than that specified in the governing regulation.
Not only did the Board reduce Mr. Wallach's hourly rate, it also reduced by $113.54 the reimbursable costs. This sum represented charges Mr. Wallach incurred in paying a photocopying shop to reproduce a transcript. We agree with the Board that this represented normal office overhead, for which reimbursement was not appropriate. That Mr. Wallach paid a photocopying shop, rather than producing the copies in his own office, does not change the nature of the expense.
The Final Decision of the Merit System Board is affirmed in part and reversed in part.