**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4040-15T3

KIMERLING & WISDOM, LLC,

   Plaintiff-Respondent,

v.

MARIA T. SCARIATI, LIGHT
SOLUTIONS, INC. and
EQUINOX ENTITIES, LTD.,

   Defendants-Appellants.

_____

   Argued October 26, 2017 — Decided November 14, 2017

   Before Judges Haas and Rothstadt.

   On appeal from Superior Court of New Jersey,
   Law Division, Hudson County, Docket No. L-
   3027-14.

   Markis M. Abraham argued the cause for
   appellants (The Abraham Law Firm, LLC,
   attorneys; Mr. Abraham, on the briefs).

   Gerald D. Miller argued the cause for
   respondent (Miller, Meyerson & Corbo,
   attorneys; Mr. Miller and Paula Odysseos-
   Panayiotou, on the brief).

PER CURIAM

Following a bench trial, defendants appeal from an April 25, 2016 judgment in favor of plaintiff after the trial judge found that defendants failed to pay plaintiff for tax preparation, accounting, and financial planning services plaintiff performed for defendants from 2000 to 2011. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff Kimerling & Wisdom, LLC is a tax and accounting services firm. Ross Wisdom, a certified public accountant, and Noah Kimerling, a financial planner, were the principals of the company. Defendant Maria Scariati is a lighting engineer. Scariati owns defendant Light Solutions, Inc., a company which manufactures marine lights and other specialty lighting products. Scariati also owns defendant Equinox Entities, Ltd., which is a subsidiary of Light Solutions.

In 2000, plaintiff began performing tax preparation, accounting, and financial planning services for Scariati and her two companies. The parties did not have a written retainer agreement stating the specific services plaintiff agreed to provide or the fees defendants would pay for these services. Instead, plaintiff sent invoices to defendants as the work was performed.

Wisdom testified that Scariati stopped paying the bills in full soon after the arrangement began. Wisdom stated that, in May

2007, he and Kimerling had a conference call with Scariati about defendants' overdue account balances. According to Wisdom, Scariati "kept saying over and over again, I don't have it, all right, all right? I will pay you when I have it, all right, all right? You can't get blood from a stone, all right, all right? I just don't have it."

Wisdom also testified that Scariati sent him an email on July 15, 2009 concerning the monies defendant owed to plaintiff. In that email, Scariati asked Wisdom for assistance in responding to a separate matter that was in litigation. At the end of the email, Scariati wrote:

> [O]nce this is out of the way & [I] am out from under this 'black cloud of litigation', [I] will be able to pick up with [M]ike [K]ingsford/[S]ignature [B]ank & hopefully get 328[1] financed to pull out some funds to finally clear up your long overdue invoices.
>
> . . .
>
> [M]aria

Plaintiff did not file its complaint attempting to recover the amounts allegedly due from defendants until July 8, 2014. Although the allegations in the complaint were limited to plaintiff's claim that defendants failed to make payments for services plaintiff provided during the six-year period immediately

---

[1] "328" is a reference to a building Scariati owned.

prior to the filing of the complaint, at trial plaintiffs sought to recover the amounts due on unpaid invoices dating back to 2000.

During her testimony, Scariati initially testified that she was dissatisfied with plaintiff's services and claimed that after Kimerling's son died in 2003, plaintiff only provided tax preparation services to her and her two companies. Scariati stated that plaintiff was never able to justify the amounts set forth in its invoices and, therefore, she "stopped . . . remitting money . . . somewhere in 2006 after they just went off the rails with charges that couldn't be justified or dealt with."

However, Scariati later testified that she believed plaintiff overcharged her in the past for its services and she then received "a credit memo" that she relied upon to pay the invoices as she received them. Scariati was not able to produce a copy of the alleged credit memo.

At the conclusion of the trial, the judge rendered an oral decision in favor of plaintiff. After reviewing the testimony, the judge found that Wisdom's account of the amounts due from each defendant for the period between 2000 and 2011 was credible and accurate. On the other hand, the judge found that Scariati's testimony was "not credible[,]" "didn't quite make sense[,]" and was "somewhat evasive and vague[.]" The judge determined there was no evidence of any overpayment by defendants and, therefore,

4

the judge stated he did not believe Scariati's claim that she used a credit memo to pay the outstanding invoices.

The judge also rejected defendants' assertion that plaintiff's demand for payment for services performed prior to July 8, 2008 was barred by the six-year statute of limitations, N.J.S.A. 2A:14-1. The judge held that Scariati "acknowledged the debt that was owed to" plaintiff in her July 15, 2009 email to Wisdom. Therefore, the judge ruled that the statute of limitations did not apply.

Using the information contained in plaintiff's invoices, the judge entered a judgment against Scariati in the amount of $4075; against Light Solutions in the amount of $10,000;[2] and against Equinox Entities in the amount of $17,850. As stated above, this judgment included payments for services plaintiff performed prior to July 8, 2008. This appeal followed.

On appeal, defendants argue that the evidence presented at trial was insufficient to support the trial judge's conclusion

---

[2] After plaintiff filed its complaint, Scariati filed an answer, but her two companies did not. Plaintiff obtained a $33,462.08 default judgment against Light Solutions and filed a writ of execution with the county sheriff to collect it. Pursuant to that writ, a Light Solutions client, who owed money to that company in connection with a separate matter, paid plaintiff $22,000. Plaintiff then subtracted this amount from the amount Light Solutions owed it. The court subsequently vacated the defaults entered against Light Solutions and Equinox Entities.

that plaintiff provided services to defendants and they failed to pay the amounts due.  We disagree.

Our review of a trial court's fact-finding in a non-jury case is limited.  Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011).  "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.  Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility."  Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).  We "should not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Ibid. (internal quotation marks omitted).  However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  We also review mixed questions of law and fact de novo.  In re Malone, 381 N.J. Super. 344, 349 (App. Div. 2005).

Applying these standards, the record fully supports the trial judge's findings concerning the accuracy of the billing statements plaintiff submitted in evidence.  Wisdom identified each of the statements, and testified that the billings were for work performed

by plaintiff for defendants. Wisdom also identified the amounts defendants had not paid for the period between 2000 and 2011. The judge, who had the opportunity to view and hear Wisdom as he testified, found that Wisdom's testimony was credible and we defer to that determination.

On the other hand, the judge found that Scariati's conflicting statements concerning the amounts due were not worthy of belief. After initially claiming that no payments were owed because plaintiff failed to perform the work, she later asserted she relied upon a credit memo to pay each invoice. Under these circumstances, we discern no basis for disturbing the judge's calculation of the amounts each defendant owed plaintiff for work performed between 2000 and 2011.

Defendants next argue that the judge erred by permitting plaintiff to collect amounts between 2000 and July 8, 2008, which were outside the six-year statute of limitations period prior to the filing of plaintiff's complaint on July 8, 2014. We agree.

A six-year statute of limitations period applied to plaintiffs claim. N.J.S.A. 2A:14-1. However, in apparent reliance upon N.J.S.A. 2A:14-24,[3] the judge concluded as a matter of law that when Scariati sent the July 15, 2009 email to Wisdom, she

_____

[3] The judge did not cite N.J.S.A. 2A:14-24 in his oral decision.

"acknowledged the debt that was owed to" plaintiff and re-started the statute of limitations period.  By so ruling, we conclude the judge mistakenly applied this statute.

In pertinent part, N.J.S.A. 2A:14-24 states:

> In actions at law grounded on any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, so as to take any case out of the operation of [the applicable statute of limitations], or to deprive any person of the benefit thereof, unless such acknowledgment or promise shall be made or continued by or in some writing to be signed by the party chargeable thereby.

"In addition to the requirement of a writing[,][4] it is also necessary that the acknowledgment relied upon be such as in its entirety fairly supports an implication of a promise to pay the debt immediately or on demand."  Denville Amusement Co. v. Fogelson, 84 N.J. Super. 164, 170 (App. Div. 1964) (citing Bassett v. Christensen, 127 N.J.L. 259, 261 (E. & A. 1941).  Thus, in order "[t]o constitute a promise to pay sufficient to remove the bar of the statute of limitations the promise [also] must be unconditional and unqualified."  Evers v. Jacobsen, 129 N.J.L. 89, 91 (E. & A. 1942) (emphasis added).

---

[4] Because they were not in writing, Scariati's statements to Wisdom and Kimerling during the May 2007 conference call obviously did not fall under N.J.S.A. 2A:14-24.

A-4040-15T3

In Evers, the Court of Errors and Appeals applied these principles to a fact situation that is remarkably similar to the facts presented here. In that case, the plaintiff was the holder of notes made by the defendant. Id. at 90. The notes were not paid and no action was taken by the plaintiff during the statute of limitations period. Ibid. Nine years after the notes matured, the defendant sent a payment to the defendant with a letter stating, "I am going to send you more when I can." Id. at 91. In her action on the notes, the plaintiff claimed that the defendant's payment and letter, nine years after the notes matured, "took the debt out of the statute of limitations and gave it new life because of this new contract." Ibid. The Court disagreed, and held:

> To constitute a promise to pay sufficient to remove the bar of the statute of limitations[,] the promise must be unconditional and unqualified. . . . Tested by this well settled rule[,] we find no proofs of any unqualified promise to pay. The only definite proof is found in the defendant's letter . . . , in which he promised "to send you more as and when I can." This clearly is not an unconditional promise to pay."

[Ibid. (internal citations omitted).]

Here, Scariati's July 15, 2009 email was not unconditional and unqualified, and it did not state that she was going to make payment immediately or on demand. Instead, she merely wrote that if a pending litigation matter was completed at some date in the

future, she would try to finance a property "to pull out some funds to finally clear up your long overdue invoices." The email did not specify the particular invoices she described as being "overdue," and Scariati did not even make clear whether she was speaking only for herself or on behalf of one or both of her companies.

Therefore, plaintiff was barred from recovering any funds for work performed before July 8, 2008, which was the first day of the six-year statute of limitations period, and the judge erred by applying N.J.S.A. 2A:14-24 to the facts of this case. Accordingly, we remand this matter to the trial court to recalculate the amounts due plaintiff for the period between July 8, 2008 and July 8, 2014, and for the entry of an amended judgment.

Finally, defendants argue for the first time on appeal that plaintiff "illegally collected" money from one of Light Solutions' clients and improperly applied it to that company's debt.[5] Ordinarily, we will decline consideration of an issue not properly raised before the trial court, unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citing

---

[5] At trial, defendants' attorney merely noted at the end of his oral argument that plaintiff allegedly did not report the collection of these funds until the trial.

A-4040-15T3

<u>Nieder v. Royal Indem. Ins. Co.</u>, 62 <u>N.J.</u> 229, 234 (1973)). Neither situation exists here and, therefore, we need not consider defendants' contention on this point. Nevertheless, we have reviewed defendant's argument and conclude that is without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION